■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v HENRY HANSON, Respondent. [600 NYS2d 698] —Order of the Supreme Court, New York County (Renee White, J., at *Mapp* hearing), rendered April 5, 1990, which granted the motion by defendant to suppress the physical evidence seized, is reversed, on the law and facts, and the motion denied.

Port Authority Police Detectives Nafey and Yungst observed defendant through one-way glass in a bus dispatcher's booth in the Port Authority Bus Terminal. Defendant, with a gray or black backpack slung over one shoulder, was walking next to the passenger line at gate 70, looking at the roadway to the bus loading area beyond the concourse. He then walked between gates 70 and 71, again looking out into the roadway. While all the other passengers remained on the line at gate 70, which was the only boarding line for two buses, defendant paced to and fro for about 20 to 25 minutes. Then defendant walked to gate 66, leaned on the door, looked over both shoulders, then quickly pushed through the unattended gate doors. Once out in the roadway, defendant walked back towards gate 70, where the Greyhound driver was taking tickets from those passengers boarding through gate 70. The defendant walked behind the driver, made a "U-turn" and walked behind the next person coming through the gate "jumping the line". After he gave the driver his ticket and boarded the bus, he was observed taking the backpack off his shoulder. Defendant took the window seat on the left hand side of the bus about the third or fourth seat from the rear.

At that point, the detectives boarded the bus. Detective Nafey walked past defendant's seat and stood behind it in the aisle while his partner Yungst stopped at the seat, displayed his shield, identified himself as a detective with the drug interdiction program and asked if defendant would speak to them. When the defendant said he would, Yungst asked him where he was going, if he was traveling alone and if he had any baggage, carry on or checked. The defendant told the detective he was traveling alone to Greenville, South Carolina, and that he had no baggage. Detective Nafey looked in the overhead for the gray or black backpack but did not see it.

However, he did see the bag under the defendant's seat and reached down from behind defendant and removed it. The detective asked an "older couple" in the seat behind defendant if the backpack belonged to them. They answered no and the detective asked defendant if the bag were his. When the defendant said "no, its not", the detective asked if he had carried it on for someone else and the defendant again said no. Detective Nafey held the bag up and asked the passengers on the bus if the bag belonged to anyone else, but no one responded affirmatively. Nafey then looked inside the backpack and found nearly three pounds of cocaine.

The Supreme Court granted the defendant's motion to suppress the narcotics, finding the detectives had no justification for approaching defendant and asking him questions, and that defendant had not abandoned the backpack. We disagree with these conclusions and therefore reverse, deny the motion and remand for further proceedings.

Subsequent to the decision of the suppression court in this case, the Court of Appeals decided *People v Hollman* (79 NY2d 181). The reasoning and result of that case make clear that the police acted properly in the case at bar. In *Hollman,* the defendant was observed by an undercover narcotics officer walking around the Port Authority Bus Terminal holding an orange bag. He was joined by a companion with a knapsack and the two men proceeded to wander around the terminal holding their baggage and continually surveying the surrounding area. They eventually boarded a bus where they placed their bags in the overhead rack ahead of their seats in the back of the bus. The officer boarded the bus and stood in front of or knelt on the seat directly in front of defendant, while a second officer stood behind him. The officer identified himself and asked permission to speak to the defendant. He asked if the defendant and his companion were traveling together, where his destination was and where defendant had checked his luggage. Defendant answered that he and the other man were not traveling together and that he did not have any luggage or carry-on bags. When he was shown the orange bag and the knapsack from the overhead rack, both he and the other individual denied ownership. After opening the bags, the officer found narcotics in both. The Court of Appeals found on these facts that the defendant was approached on the bus in a general, nonthreatening encounter for an articulable reason, not necessarily indicative of criminality, and asked briefly about where he was going and whether he was traveling together with a companion. The Court found "[t]hese questions

\* \* \* consistent with a request for information, and \* \* \* permissible under the circumstances." *(Supra,* at 193.) The Court also concluded that the question whether the men had checked their luggage was permissible although such a question was more clearly directed toward possible criminality. Finally, the Court held that when the two men denied they had baggage, the officer had a "founded suspicion that criminality was afoot" which justified the greater degree of intrusion inherent in the common-law inquiry. *(Supra,* at 193.) "We agree that the officer's questions regarding travel plans, destination, and where they had placed their luggage were part of a request for information but find that the questions regarding the ownership of the bags were, given [the officer's] knowledge, a proper exercise of the officer's common-law right to inquire. Thus, there was no overbearing police pressure and the approach and ensuing questioning were in all respects proper." *(Supra,* at 193.)

*Hollman* clearly reaffirms prior caselaw that, contrary to the hearing court's impression in this case, officers do not need an indication of criminality to approach a defendant in a request for information. "The minimal intrusion of approaching to request information is permissible when there is some objective credible reason for that interference not necessarily indicative of criminality" *(People v De Bour,* 40 NY2d 210, 223). Here, the police observed defendant pacing back and forth and scanning the area of the terminal for 20 to 25 minutes and then boarding the bus, not from the nearest gate, but in a surreptitious manner from a more distant gate where he "cut" into the line. This conduct justified the detective's minimal intrusion of approaching defendant and requesting information. When defendant denied ownership of the knapsack which the detective had seen him carry, the inquiry properly advanced to the common-law inquiry level, since the officer then had a "founded suspicion that criminality was afoot" *(People v Hollman, supra,* at 193).

Since there was "no overbearing police pressure and the approach and ensuing questioning were in all respects proper" *(People v Hollman, supra,* at 193), the abandonment of the bag by the defendant was *not,* as suggested by the hearing court, a "spontaneous, provoked reaction to illegal police conduct" but instead a deliberate and calculated decision. We note further that the hearing court's ruling that defendant's denial of ownership of the bag was not a valid abandonment, because it was merely "an attempt to avoid arrest", is simply irrelevant to a determination of whether a valid abandonment took

place. Only unlawful police coercion, not the defendant's desire to avoid arrest, will negate the defendant's deliberate, specific disclaimer of ownership *(see, United States v Knox,* 839 F2d 285, 293, *cert denied* 490 US 1019). Concur—Sullivan, J. P., Wallach and Asch, JJ.

Rosenberger, J., dissents in a memorandum as follows: I would affirm the order of the Supreme Court granting the defendant's motion to suppress physical evidence.

Detective Nafey testified that he suspected that the defendant was a drug courier prior to approaching and questioning him on the bus, based on his evaluation of ten factors contained in operating guidelines provided by the Port Authority Police Department. He conceded, however, that the defendant met but one of the ten factors of the profile, his actions in pacing and looking around the terminal area.

When the detectives first observed the defendant, it was 1:15 in the morning and passengers were lined up at gates 70 and 71, waiting for a bus which had been scheduled to depart at that time, but was delayed. Passengers did not begin to board until some twenty minutes later. While the defendant waited for the bus, the detectives watched him pace and look out to the bus ramp. They then saw him go through an adjoining gate and "cut" ahead of the line.

After the defendant handed his ticket to the driver, he boarded the bus and took a seat. The detectives followed him aboard and then surrounded him, with one conducting the questioning while the other searched for his bag. As found by the Supreme Court, the detectives were not interested in any of the defendant's responses. They had already determined to seize the defendant's bag.

The defendant's actions were consistent with those of any passenger waiting for a bus to depart. The Supreme Court found, as fact, that the detectives were determined to seize the defendant's backpack prior to their boarding the bus. The court further found that Nafey's attempt to justify the initial approach as merely a request for information was a ruse designed to force the defendant to relinquish any claim to his bag. While, as the majority notes, the court applied the wrong standard in determining the conduct necessary to justify an approach and request for information by the police *(see, People v Hollman,* 79 NY2d 181), nevertheless, with regard to the court's findings of fact and resolution of issues pertaining to the witness' credibility, such findings must be accorded great weight *(People v Prochilo,* 41 NY2d 759; *People v Maylor,* 184 AD2d 371, *lv denied* 80 NY2d 906).

As the Court of Appeals stated in *People v Hollman (supra,* at 190 [explaining *People v De Bour,* 40 NY2d 210, 219]), "in their law enforcement capacity, police officers have fairly broad authority to approach individuals and ask questions relating to identity or destination, provided that the officers do not act on whim or caprice and have an articulable reason not necessarily related to criminality for making the approach". Here the detectives had set out to search the boy before there was any approach or questioning. Their actions were thus totally irrelevant to the ultimate seizure.

The record supports the Supreme Court's finding that the detectives used a ruse to conduct a search and seizure. Since the approach was improper, the Supreme Court correctly concluded that the abandonment of the bag was a "spontaneous, provoked, reaction to illegal police conduct" *(cf., People v Hollman, supra; People v Boodle,* 47 NY2d 398, *cert denied* 444 US 969). Accordingly, I would affirm the order granting the defendant's motion to suppress.