■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DWIGHT FIELDS, Appellant. [683 NYS2d 70] —Judgment, Supreme Court, New York County (Paul Bookson, J., at suppression hearing; Brenda Soloff, J., at plea and sentence), rendered July 31, 1996 convicting defendant, upon his plea of guilty, of one count of criminal possession of a controlled substance in the

third degree and sentencing him, as a second felony offender, to a prison term of from 4½ to 9 years, unanimously reversed, on the law, the motion to suppress physical evidence granted and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30 day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

Defendant's activities prior to boarding the bus (i.e., arriving one minute prior to the departure time, walking in a small circle while the last passenger was boarding the bus, and then hurriedly handing his ticket over, and being the last passenger to board the bus), and the officer's subsequent observations of defendant apparently moving things between his pockets and his bag before taking his seat on the bus, were all "susceptible of an innocent explanation" (*People v Boyd*, 188 AD2d 239, 241), and merely provided the police officer with justification for asking the defendant Level-I type questions (*People v De Bour*, 40 NY2d 210, 223) about his residence, destination and length of visit to New York City. The officer's training in drug surveillance at the bus terminal and typical conduct of drug traffickers, and his knowledge that this particular bus route was previously the source of drug trafficking arrests, cannot serve to elevate this defendant's conduct so as to provide a "founded suspicion that criminal activity is afoot" such as would justify a somewhat more accusatory, Level-II inquiry (*supra,* at 223).

Nevertheless, after defendant furnished the requested Level-I information, the officer went on to identify himself as a narcotics officer and asked defendant whether anyone had asked him to carry anything on the bus for him, obviously referring to the black gym bag that defendant had placed on the seat next to him with his hand over it. While this question did not necessarily amount to a specific question about the ownership and contents of the gym bag, it was a more intrusive type of question, more accusatory in nature and focusing on the possible criminality of the person approached. This is the definition of a Level-II type inquiry, which is permissible only where the officer possesses a "founded suspicion that criminality is afoot" (*People v Hollman*, 79 NY2d 181, 191).

Indeed, in clarifying the difference between a Level-I request for information and a Level-II common-law right of inquiry, the *Hollman* Court explained that: "Where the person ap-

proached from the content of the officer's questions might reasonably believe that he or she is suspected of some wrongdoing, the officer is no longer merely asking for information. The encounter has become a common-law inquiry that must be supported by founded suspicion that criminality is afoot. No matter how calm the tone of narcotics officers may be, or how polite their phrasing, a request to search a bag is intrusive and intimidating and would cause reasonable people to believe that they were suspected of criminal conduct. These factors take the encounter past a simple request for information." (*People v Hollman, supra*, at 191-192.)

In short, the question of whether anyone asked defendant to carry anything on the bus for him was improper because at the time the officer asked it, he lacked a founded suspicion that criminal activity was afoot (*Matter of Antoine W.*, 79 NY2d 888; *People v Irizarry*, 79 NY2d 890; *People v Owens*, 206 AD2d 303). The officer's inquiry went beyond a permissible inquiry such as whether an individual had brought any luggage onto the bus or whether he had checked the bag (*People v Hanson*, 195 AD2d 408).

Even if the question posed by the police officer to defendant, as to whether anyone asked him to take the bag onto the bus, could be correctly characterized as a Level-I type question, the repeat of the same question by the officer, as well as the officer's request to defendant to conduct a search of his own bag, was clearly unjustified, considering the predicate information the officer had at that point. The fact that the defendant appeared to become nervous and began to sweat did not provide a basis for a more elevated level of intrusion on the part of the officer (*see, People v Owens*, 206 AD2d 303, 304, *supra*; *People v Boyd*, 188 AD2d 239, *supra*).

Accordingly, the officer's request that the defendant look through his own gym bag, and the officer's subsequent search into the defendant's bag, was unjustified. The fruits of this illegal search, the physical evidence and statements, should have been suppressed. Concur—Rosenberger, J. P., Wallach, Rubin and Saxe, JJ.