People v Fraser (2020 NY Slip Op 01037)





People v Fraser


2020 NY Slip Op 01037


Decided on February 13, 2020


Appellate Division, First Department


Webber, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 13, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta, P.J., Dianne T. Renwick, Sallie Manzanet-Daniels, Troy R. Webber, JJ.


4844/14 8076 

[*1]The People of the State of New York, Respondent,
v
Jawawn Fraser, Defendant-Appellant.



Defendant appeals from the judgment of the Supreme Court, New York County (Ronald A. Zweibel, J.), rendered January 13, 2016, convicting him, after a jury trial, of robbery in the third degree, and imposing sentence.




Robert S. Dean, Center for Appellate Litigation, New York (Jacqueline A. Meese-Martinez of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Frank Glaser and Susan Axelrod of counsel), for respondent.



WEBBER, J.


We find that the motion court properly denied defendant's suppression motion. The testimony elicited at the hearing was that prior to a buy-and-bust operation, P.O. Matthew Regina and his field team met to discuss how they would proceed with the operation. During the meeting, they agreed on a nonverbal distress signal that the undercover officer could use if he were in trouble.
According to Regina, shortly before 9:00 p.m., the undercover officer was in front of 118 Avenue D. Regina was on the east side of Avenue D with the field team's ghost undercover officer, observing the target location from 60 to 70 feet away. Regina testified that although it was dark out, he could see the undercover officer in artificial light from nearby buildings. Shortly thereafter, defendant walked to within one to two feet of the undercover officer and began speaking with him. Soon, a group of five or six other people arrived and stood about three feet away from the undercover officer. Given the number of people around the undercover officer, Regina radioed the rest of the field team and told them they should move in closer to the [*2]undercover officer.
Shortly thereafter, the undercover officer made the previously agreed upon nonverbal distress signal. According to Regina, he and P.O. Deltoro walked toward defendant and the undercover officer. When they arrived, defendant and the undercover officer were "almost struggling." Deltoro arrived first, said "police," and grabbed defendant with both hands. Defendant broke free and ran. Defendant was ultimately apprehended and placed under arrest by other members of the field team. Regina testified that he searched defendant and recovered, among other things, cash and the undercover officer's driver's license.
Later, in speaking to the undercover officer, Regina learned that defendant demanded to see his identification threatening that if not produced, defendant would "f*** him up," and that the group standing nearby told defendant to "f*** him up." According to Regina, the undercover officer showed defendant his identification, and that defendant grabbed it from him and refused to return it.
Regina's testimony established that there was probable cause for defendant's arrest, and that defendant was searched incident to a lawful arrest. It is the information known to the police at the time of the arrest which is relevant in determining whether the arrest was justified. This Court has held that a distress signal can provide police officers with reasonable suspicion to detain a suspect in order to investigate (People v Rodriguez, 265 AD2d 181 [1st Dept 1999], lv denied 94 NY2d 906 [2000]; People v Davis, 130 AD2d 268, 270-271 [1st Dept 1987], appeal dismissed 72 NY2d 950 [1988]). Reasonable suspicion is defined as "the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand" (People v Cantor, 36 NY2d 106, 112-113 [1975]).
Here, the distress signal, coupled with Regina's observation of defendant and the nearby group standing close to the undercover officer and yelling, provided the officers with reasonable suspicion (see People v Palmer, 290 AD2d 224, 224-225 [1st Dept 2002], lv denied 97 NY2d 759 [2002] [during nighttime buy-and-bust operation, radio transmission of undercover officer's screaming and defendant's close proximity to her, provided reasonable suspicion to detain defendant, where the "urgency" of the scream "clearly indicated that [the] defendant had committed or attempted to commit some criminal act against her and that her safety was in danger"]; see also People v Lopez, 258 AD2d 388, 388 [1st Dept 1999], lv denied 93 NY2d 1022 [1999] [police officers' observation of the complainant, who had "a panicked look on his face" while waving to a marked police car to draw the officers' attention while chasing defendant, provided reasonable suspicion to pursue]).
When Regina and Deltoro approached, they observed the undercover officer struggling with defendant. This, coupled with the fact that when Deltoro tried to restrain defendant, defendant broke free and fled, established that the police officers had probable cause to arrest defendant for obstruction of governmental administration in the second degree, based on defendant's action of intentionally attempting to prevent Deltoro from performing an official function by means of force.
While Regina's testimony established the requisite probable cause to arrest defendant, the court providently exercised its discretion in granting the People's motion to reopen the suppression hearing before rendering a decision in order to permit the People to call an officer with additional information tending to establish reasonable suspicion (see eg. People v Cook, 161 AD3d 708, 708, [1st Dept 2018]; affd ___ NY3d ___, 2019 NY Slip Op 09059 [2019]; People v Gnesin, 127 AD3d 652 [1st Dept 2015], lv denied 25 NY3d 1164 [2015], lv denied 29 NY3d 948 [2017]; People v McCorkle, 111 AD3d 557 [1st Dept 2013], lv denied 24 NY3d 963 [2014]; see also People v Lee, 143 AD3d 643 [1st Dept 2016]). The court had not made any ruling, and the circumstances did not pose a risk of tailored testimony.
Upon granting the People's motion to present additional evidence, the court expressly [*3]stated that it had not yet rendered a decision (see People v Valentin, 132 AD3d 499, 500 [1st Dept 2015], affd 29 NY3d 150 [2017]). Despite defendant's arguments to the contrary, there is nothing in the hearing transcript to suggest that the court previously forecasted its decision or provided guidance to the People. The court's very brief remark at the end of the initial hearing about an aspect of the facts cannot be viewed as "direction from the court" (People v Kevin W., 22 NY3d 287, 295 [2013]), and was highly unlikely to result in tailored testimony (see People v Lee, 143 AD3d at 644).
The evidence adduced at the reopened hearing established another lawful basis for defendant's arrest. The undercover officer testified that, as he was attempting to buy drugs from another person, defendant interfered and forcibly took property from the officer. This gave the undercover officer probable cause to arrest defendant for robbery, which may be imputed to the arresting officer by way of the fellow officer rule (see People v Ketcham, 93 NY2d 416, 419 [1999]). The combination of the undercover officer's distress signal, the field team officers' observation of defendant in a struggle with the undercover officer, and the undercover officer's act of chasing defendant satisfied the requirement that the arresting officer act on "direction of" or "communication with" a fellow officer (id.). The court's general finding of probable cause can be reasonably interpreted as encompassing this theory (see People v Nicholson, 26 NY3d 813, 825 [2016]; People v Garrett, 23 NY3d 878, 885 n 2 [2014]).
The jury's verdict was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]). There is no basis for disturbing the jury's credibility determinations.
Accordingly, the judgment of the Supreme Court, New York County (Ronald A. Zweibel, J.), rendered January 13, 2016, convicting defendant, after a jury trial, of robbery in the third degree, and sentencing him to a term of two to six years, should be affirmed.
All concur.
Judgment Supreme Court, New York County (Ronald A. Zweibel, J.), rendered January 13, 2016, affirmed.
Opinion by Webber, J. All concur.
Acosta, P.J., Renwick, Manzanet Daniels, Webber, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 13, 2020
CLERK