OPINION OF THE COURT
 

 Simons, J.
 

 Defendants in these three unrelated appeals have been arrested and prosecuted for various counts of criminal possession
 
 *105
 
 of drugs. Prior to their arrests, each had deposited or hidden drugs in a public place and they challenged the legality of the police actions in seizing them. The questions raised are whether, in such circumstances, a defendant has standing to challenge the legality of the police conduct and whether the alleged "abandonment” of the property affects the right to do so. Defendant Mims also successfully claimed that he was arrested without probable cause. The arrest was unlawful, he says, because there was insufficient evidence to warrant the imputation of knowledge from one law enforcement officer to the other under the "fellow officer” rule.
 

 For the reasons which follow we reverse all three orders.
 

 I.
 
 People v Ramirez-Portoreal
 

 On June 10, 1992, three law enforcement officers were on a drug interdiction assignment at the bus terminals in the City of Albany. Sheriff’s Investigator Matthew Campbell testified at the suppression hearing that he, Inspector John Burke and Detective Jimmy Tuffy were looking for drug couriers travel-ling from New York City, through Albany, to points west. The three plainclothes officers, with their badges prominently displayed, were seated on a loading platform observing bus passengers. Defendant Ramirez-Portoreal and two companions arrived on a bus from New York City. When they alighted, defendant was carrying a single piece of luggage; his companions carried none. One of defendant’s companions noticed the officers, and the three travelers immediately boarded a westbound bus and took seats in different parts of it. Before sitting, defendant placed the bag he carried in an overhead luggage compartment located one row béhind his seat and across the aisle from it.
 

 The three officers boarded the bus, identified themselves and announced that they were conducting "drug interdiction.” They asked all passengers to show their tickets and identification. Defendant produced a ticket but no identification. When Burke asked him whether he had any luggage aboard the bus, he replied that he did not. When asked whether the bag that the officers had seen him place in the luggage rack was his, defendant denied ownership of it. Inspector Burke then asked the bus passengers as a group whether the bag belonged to anyone, and whether anyone objected to his opening it to learn its ownership. None of the passengers responded. Upon open
 
 *106
 
 ing the bag, the officer discovered a glossine bag containing dime bags of heroin. Defendant and his companions were removed from the bus and arrested. A further search of the bag revealed a quantity of marihuana.
 

 County Court concluded that Ramirez-Portoreal had standing to challenge the police conduct, and that he had not abandoned the bag. Applying the tiered analysis of
 
 People v De Bour
 
 (40 NY2d 210), the court determined that the officer’s questions regarding ownership of the bag constituted a common-law inquiry which was made without a founded suspicion of criminality to support that level of intrusion. Accordingly, the court concluded that the search of the bag was improper and granted defendant’s motion to suppress the physical evidence. The Appellate Division reversed. It concluded that the evidence at the suppression hearing revealed no more than defendant’s possessory interest in the bag, particularly in light of his denial of ownership of it, and decided that defendant had failed to establish standing
 
 (see,
 
 214 AD2d 830). Defendant appeals.
 

 People v Sanchez
 

 Testimony at the suppression hearing established that on March 1, 1993, an undercover officer in a drug-prone location in Manhattan observed defendant Sanchez surreptitiously place a light brown "package,” which bore the characteristics of narcotics packaged for street sale, into the exhaust pipe of a parked van. After placing the drugs there, the defendant walked several feet away but did not leave the immediate area. Two other officers, acting on the undercover’s radio transmission, approached defendant and identified themselves. They told him not to move and immediately conducted a safety "pat-down.” The undercover officer directed one of the backup officers to remove the package from the exhaust pipe. When the officer did so, he recovered 10 small, pink baggies containing cocaine and held together by masking tape.
 

 Criminal Court granted defendant’s motion to suppress the drugs. It did not expressly consider whether defendant had established standing to challenge the police conduct. Addressing only the issue of defendant’s abandonment of the package, it determined that he had not abandoned the property when he secreted it in the exhaust pipe of the van. Finding the police conduct illegal, the court granted defendant’s motion to suppress the physical evidence. The Appellate Term held that defendant’s standing was established by the fact that he had actually possessed the package moments before being detained and that he remained close to it at all times. It concluded that
 
 *107
 
 the circumstances did not justify a police intrusion any greater than an initial stop and inquiry of defendant, and it therefore affirmed the lower court. The People appeal.
 

 People v Mims
 

 Police Officer Brian Fleming testified at the suppression hearing that on September 27, 1991, he and Officer Edward Lott were stationed on the roof of a building in northern Manhattan. While Officer Fleming used binoculars to observe defendant Mims on the sidewalk on the north side of 154th Street, Officer Lott stood guard to make sure no one approached from the rear. Lott did not observe the scene below. Fleming saw two people approach and give defendant currency in exchange for green-topped vials. Moments later, another pair approached defendant. After a brief conversation, defendant crossed to the south side of 154th Street and reached into a cardboard box that was among a pile of boxes and garbage. He pulled a paper bag from the box, withdrew unidentified items from the bag, replaced the bag in the box, and returned to the other side of the street. Again, Fleming saw defendant conduct what appeared to be a drug sale.
 

 Officers Fleming and Lott left the roof, got into their patrol car and drove around the block onto 154th Street to Mims’ location. When they got out of the car, Lott detained defendant while Fleming went to retrieve the paper bag from the box in the trash pile. Fleming looked inside the bag and found 18 green-capped vials of crack cocaine. He then recrossed the street, searched defendant and recovered $130 from defendant’s pocket. Lott found another green-capped vial on the ground near defendant.
 

 Defendant moved to suppress the evidence and after a hearing Supreme Court granted the motion and dismissed the indictment. The court concluded that defendant had not abandoned the bag of crack vials, and that he therefore had standing to contest Officer Fleming’s recovery of the bag. On the merits, the court found that while Officer Fleming possessed probable cause to arrest defendant, Officer Lott did not because the People had failed to present direct evidence of any communication from Fleming to Lott. Accordingly, it determined that Lott’s arrest of defendant was not supported by probable cause and all the evidence was suppressed because it had been seized as incident to an illegal arrest. A divided Appellate Division held that defendant’s conduct in maintaining "control” over the paper bag in the garbage served to confer upon him standing to contest the search of it, and that the People had failed to establish that he had abandoned his prop
 
 *108
 
 erty. It further concluded that Supreme Court had not erred in finding the evidence insufficient to establish Officer Lott’s probable cause (205 AD2d 78). The People appeal.
 

 II.
 

 A defendant seeking suppression of evidence has the burden of establishing standing by demonstrating a legitimate expectation of privacy in the premises or object searched
 
 (People v Wesley,
 
 73 NY2d 351, 358-359;
 
 People v Reynolds,
 
 71 NY2d 552, 557;
 
 People v Rodriguez,
 
 69 NY2d 159;
 
 People v Ponder,
 
 54 NY2d 160;
 
 see, Rawlings v Kentucky,
 
 448 US 98, 106;
 
 United States v Salvucci,
 
 448 US 83;
 
 Rakas v Illinois,
 
 439 US 128;
 
 Katz v United States,
 
 389 US 347;
 
 see generally,
 
 5 LaFave, Search and Seizure § 11.3 [3d ed]). Once defendant has established standing, it becomes the People’s burden to demonstrate that defendant’s action in discarding the property searched, if that is the fact, was a voluntary and intentional act constituting a waiver of the legitimate expectation of privacy
 
 (see, People v Howard,
 
 50 NY2d 583, 593,
 
 cert denied
 
 449 US 1023).
 

 A.
 

 A legitimate expectation of privacy exists where defendant has manifested an expectation of privacy that society recognizes as reasonable
 
 (People v Reynolds,
 
 71 NY2d, at 557, supra;
 
 California v Greenwood,
 
 486 US 35, 39-40;
 
 see also, Oliver v United States,
 
 466 US 170). Thus, the test has two components. The first is a subjective component — did
 
 defendant
 
 exhibit an expectation of privacy in the place or item searched, that is, did he seek to preserve something as private
 
 (see, Smith v Maryland,
 
 442 US 735, 740). The second component is objective — does society generally recognize defendant’s expectation of privacy as
 
 reasonable,
 
 that is, is his expectation of privacy justifiable under the circumstances
 
 (see, id.,
 
 at 740-741;
 
 see, e.g., People v Mercado,
 
 68 NY2d 874, 876,
 
 cert denied
 
 479 US 1095).
 

 Standing to challenge a search is not established by asserting a possessory interest in the goods seized — defendant must assert a privacy interest in the place or item searched
 
 (see, People v Rodriguez,
 
 69 NY2d, at 163, supra;
 
 People v Ponder,
 
 54 NY2d, at 166, supra;
 
 United States v Salvucci,
 
 448 US 83,
 
 supra; Rawlings v Kentucky,
 
 448 US, at 106,
 
 supra).
 
 However, constitutional protections against unreasonable searches and seizures are not limited to private premises
 
 (see, e.g., People v
 
 
 *109
 

 Mercado, supra),
 
 and a person may have a legitimate expectation of privacy in an item or container such as a suitcase or bag which was the object of the search and the "place” from which the contraband was seized
 
 (see, People v Gokey,
 
 60 NY2d 309, 312;
 
 People v Smith,
 
 59 NY2d 454, 458;
 
 see also, New York v Belton,
 
 453 US 454, 461;
 
 United States v Chadwick,
 
 433 US 1). Accordingly, and particularly in cases where the search occurred in public, the suppression court must identify the place in which defendant asserts his or her expectation of privacy. For example, the object of defendant Ramirez-Portoreal’s claimed expectation of privacy was the piece of luggage he carried. Defendant Sanchez, whose "package” was not in a container and was obviously contraband, could claim an expectation of privacy only in the tailpipe of the van. The object of defendant Mims’ asserted expectation of privacy was the paper bag in which Officer Fleming discovered crack vials.
 

 The suppression court must also consider and determine the nature of the interest asserted, distinguishing between the separate concepts of possession and an expectation of privacy
 
 (see, People v Wesley,
 
 73 NY2d, at 359,
 
 supra; People v Rodriguez,
 
 69 NY2d, at 163,
 
 supra; see also, United States v Salvucci,
 
 448 US, at 91-92,
 
 supra; cf., Rawlings v Kentucky,
 
 448 US, at 104-105,
 
 supra).
 
 Whether defendant has a legitimate expectation of privacy in the place searched is a substantively different and broader question than whether he or she has a possessory interest in it. While defendant’s exercise of dominion and control over premises searched or an item seized may establish constructive possession of it, a legitimate expectation of privacy turns on consideration of all of the surrounding circumstances, including but not limited to defendant’s possessory interest
 
 (see, People v Rodriguez,
 
 69 NY2d, at 163,
 
 supra; Rawlings v Kentucky, supra; cf., People v Whitfield,
 
 81 NY2d 904).
 

 In sum, standing to seek suppression of evidence requires the defendant to establish, by defendant’s own evidence or by relying on the People’s evidence
 
 (see, People v Gonzalez,
 
 68 NY2d 950, 951), that he or she had a legitimate expectation of privacy in the place or item that was searched. The suppression court must identify the object of defendant’s expectation of privacy, determine whether defendant exhibited an expectation of privacy in it, and evaluate whether the circumstances would lead society to regard defendant’s expectation as reasonable. If the court determines that defendant had a legitimate expectation of privacy in the item searched, standing to challenge the legality of the police conduct is established.
 

 
 *110
 
 B.
 

 In the context of a challenge to the legality of a police search, the People may argue that the evidence need not be suppressed because defendant has abandoned it. Property is deemed abandoned when the expectation of privacy in the object or place searched has been given up by voluntarily and knowingly discarding the property. The result is a waiver of the constitutional protection. The burden rests upon the People to establish the waiver
 
 (People v
 
 Howard, 50 NY2d, at 593,
 
 supra).
 

 Defendant’s intention to relinquish an expectation of privacy will be found if the circumstances reveal a purposeful divestment of possession of the item searched (see,
 
 People v Martinez,
 
 80 NY2d 444;
 
 cf., People v Howard,
 
 50 NY2d, at 593,
 
 supra).
 
 Standing alone, the surrender of control or disclaimer of ownership does not always establish a waiver (see
 
 generally,
 
 1 LaFave, Search and Seizure § 2.6 [b] [3d ed 1996]). Even where abandoned, moreover, if the abandonment is coerced or precipitated by unlawful police activity, then the seized property may be suppressed because it constitutes "fruit” of the poisonous tree
 
 (see, Wong Sun v United States,
 
 371 US 471). The inquiry in such cases is whether the contraband itself "was revealed as a direct consequence of the illegal nature of the stop”
 
 (People v Cantor,
 
 36 NY2d 106, 114) or whether defendant’s decision to relinquish possession was a calculated decision which attenuated the discovery of the evidence from the illegal police conduct
 
 (see, People v Boodle,
 
 47 NY2d 398). That involves an evaluation of defendant’s motivation, to determine whether abandonment of the property was a spontaneous and unintended response to the police activity, or a considered judgment to waive any privacy interest in the item searched
 
 (compare, People v Boodle, supra, with People v Howard, supra).
 

 In
 
 People v Ramirez-Portoreal,
 
 the People contend that defendant abandoned the bag. The suppression court correctly determined that defendant had a legitimate expectation of privacy in the bag and the question is whether he gave up that expectation of privacy. If he did, but did so as a result of unlawful police activity, the inquiry then is whether his abandonment was intentional and voluntary as the product of a considered judgment, or a direct and spontaneous consequence of the illegality.
 

 The question of abandonment may also arise in cases such as
 
 People v Mims
 
 in which a vial of crack cocaine was recovered
 
 *111
 
 from the ground near defendant. That obvious contraband was allegedly discarded by defendant in response to a police encounter. Because it was plainly revealed by defendant’s action and not discovered as the result of a search, whether such evidence should be suppressed is to be analyzed only under the
 
 Boodle
 
 poisonous fruits analysis, not as a question of waiver of an expectation of privacy.
 

 It should be noted that the legal question of abandonment— i.e., waiver of a legitimate expectation of privacy — is not implicated by the seizure of the 18 crack vials from the trash pile in
 
 Mims
 
 or the contraband discovered in the tailpipe in
 
 Sanchez.
 
 Inasmuch as neither defendant established a legitimate expectation of privacy in the place searched, no question of waiver arises.
 

 C.
 

 Applying these rules to the appeals before us requires a reversal in each appeal.
 

 In
 
 People v Ramirez-Portoreal,
 
 County Court suppressed the evidence because it determined that defendant had standing to contest the search of the bag and that the police conduct in boarding the bus and questioning him was not lawful. The Appellate Division reversed, relying upon
 
 People v Whitfield
 
 (81 NY2d, at 906,
 
 supra),
 
 to determine that defendant lacked standing because he had shown no more than a possessory interest in the bag and had denied ownership of it. However, the facts in
 
 People v Whitfield
 
 are substantially different. There, defendant had been seen carrying the bag at a time and place significantly attenuated from the search and we concluded that such limited evidence of possession was insufficient to establish his expectation of privacy in the bag. Our decision was not intended to state a general rule that defendant’s possessory interest is insufficient to establish standing as a matter of law. As we stated, "[t]he [suppression] court must also consider such factors as whether the defendant took precautions to maintain privacy and whether the defendant had the right to exclude other persons from access” (id., at 906).
 

 From the time defendant Ramirez-Portoreal left the first bus until he boarded the second bus and placed the bag in the luggage rack, he was in actual and sole possession of it. The bag was closed, evincing an effort to maintain the privacy it afforded. The fact that defendant seated himself at a distance from the bag does not necessarily indicate that he lacked the
 
 *112
 
 right to exclude others from access to it; indeed, it is unlikely that a stranger would have attempted to open the bag or would have been permitted to do so. And even though a prudent traveler might exercise greater care with respect to personal luggage, it cannot be said that society would deem an expectation of privacy in a closed piece of luggage unreasonable merely because it was not stowed in the luggage rack immediately above the traveler. In short, the evidence established defendant’s standing to contest the search.
 

 Rather than evaluating the factors we identified in
 
 Whitfield,
 
 however, the Appellate Division blended the separate analytical questions of defendant’s establishment of the legitimate expectation of privacy and the People’s establishment of defendant’s waiver of it by abandonment. Moreover, because it held that defendant lacked standing, the Appellate Division did not reach the question of the legality of the police conduct
 
 (see, People v Hollman, 79
 
 NY2d 181, 193;
 
 see also, People v Hanson,
 
 195 AD2d 408). Thus, its order denying the motion to suppress should be reversed and the matter remitted to the Appellate Division to determine the question of abandonment.
 

 In
 
 People v Sanchez,
 
 the suppression court and the Appellate Term concluded that defendant had standing to challenge the admissibility of the drugs seized from the tailpipe of the van. Their conclusions rested on analysis of defendant’s possession of the contraband; they did not evaluate whether defendant had a legitimate expectation of privacy in the tailpipe of the van. Defendant’s conduct in remaining close to the van may establish his "dominion and control” over the drugs, and therefore his possession of them, and his proximity may even support his
 
 subjective
 
 expectation of privacy in the tailpipe insofar as he believed he could exclude others from it. Notwithstanding this conduct, however, an expectation of privacy in the tailpipe of a vehicle not owned by defendant and parked on a busy urban street is not objectively reasonable as a matter of law. Accordingly, we conclude that defendant lacked a legitimate expectation of privacy in the area searched, and his motion to suppress the physical evidence should be denied because he lacked standing to challenge the police conduct.
 

 Similarly, in
 
 People v Mims
 
 the motion to suppress the 18 vials of crack discovered in the paper bag that defendant had secreted in a trash pile should be denied for lack of standing. Supreme Court and the Appellate Division determined that defendant had not abandoned the property because he remained
 
 *113
 
 relatively close to it and returned to it repeatedly, thereby exercising dominion and control over it. While those facts are relevant to defendant’s subjective expectation of privacy, the courts did not evaluate the objective component of the expectation of privacy. To the extent Mims’ expectation of privacy is asserted in a trash pile on a city sidewalk, society would not accept that expectation as objectively reasonable: defendant claimed no possessory interest in the trash pile and it was "readily accessible to animals, children, scavengers, snoops, and other members of the public”
 
 (see, California v Greenwood,
 
 486 US, at 40,
 
 supra).
 

 Nor is there an objectively reasonable expectation of privacy in a paper bag secreted in a trash pile. Manifestly, any person or animal having access to the trash pile would have the same access to the container stowed in it, and it is not reasonable to expect that the contents of a paper bag found in a trash pile would remain undisturbed or undiscovered out of respect for the privacy of the person who put it there. Accordingly, we conclude that defendant lacked standing to challenge the police conduct leading to the discovery of the 18 crack vials and the motion to suppress that evidence should be denied.
 

 III.
 

 In
 
 People v Mims,
 
 defendant also sought to suppress the single crack vial and some currency seized from his person because it was the fruit of an unlawful arrest. The question presented relates to the legality of the arrest of defendant, and whether the knowledge of Officer Fleming could be imputed to Officer Lott to sustain the arrest.
 

 The "fellow officer” rule provides that even if an arresting officer lacks personal knowledge sufficient to establish probable cause, the arrest will be lawful if the officer "acts upon the direction of or as a result of communication with a superior or [fellow] officer or another police department provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest”
 
 (People v Horowitz,
 
 21 NY2d 55, 60;
 
 People v Rosario,
 
 78 NY2d 583, 588,
 
 cert denied
 
 502 US 1109;
 
 People v Lypka,
 
 36 NY2d 210, 213). If the arrest is challenged by defendant in a motion to suppress, however, "it becomes incumbent upon the People to establish that the officer or agency imparting the information, in fact possessed the probable cause to act”
 
 (People v Rosario, supra,
 
 at 588;
 
 People v Dodt,
 
 61 NY2d 408, 416;
 
 People v Landy,
 
 59 NY2d 369, 375). The People must therefore come forward with
 
 *114
 
 evidence establishing probable cause to arrest
 
 (People v Parris,
 
 83 NY2d 342, 346;
 
 People v Petralia,
 
 62 NY2d 47, 52,
 
 cert denied
 
 469 US 852). The narrow question presented here is whether the People may establish that Fleming directed the arrest of defendant or communicated the information which gave him probable cause to arrest to Lott by relying on circumstantial evidence.
 

 Officer Fleming testified that he observed defendant’s activities from the rooftop, but that Officer Lott, who was guarding him, did not. Thus, Lott had no personal knowledge of defendant’s activity. But Fleming also testified that he and Lott were working together on a drug interdiction assignment, that they left the roof together, drove around the block in one car, and that when they arrived at defendant’s location Lott exited the car and immediately detained defendant while Fleming retrieved the paper bag from the trash pile.
 

 Supreme Court concluded that Fleming had probable cause to arrest defendant but that in the absence of
 
 direct
 
 evidence of communication from Fleming to Lott, the People had failed to establish the legality of Lott’s detention of defendant. While it would have been better practice to elicit direct evidence of a communication between the officers, the suppression court was not precluded from drawing the inference from the circumstantial evidence presented that Fleming conveyed his information to Lott.
 
 *
 

 Where undisputed facts permit but one inference to be drawn, this Court may determine the issue
 
 (see, People v Ferro,
 
 63 NY2d 316, 321,
 
 cert denied
 
 472 US 1007). Here, the two officers were engaged in a single assignment. They were together on the roof, and they proceeded together to arrest defendant. Officer Lott had no personal knowledge of defendant’s activity, appearance or precise location, and yet he alighted from the car and immediately detained defendant. No other inference may be drawn from these facts but that Lott was acting at the direction of, or upon knowledge shared by, Officer Fleming. Inasmuch as Supreme Court determined that Officer Fleming’s observations of defendant provided him with probable cause to arrest defendant, we conclude that the arrest of defendant was lawful and that the motion to suppress should be denied.
 

 
 *115
 
 IV.
 

 Accordingly, in
 
 People v Ramirez-Portoreal,
 
 the order of the Appellate Division should be reversed and the case remitted to the Appellate Division, Third Department, for further proceedings in accordance with this opinion.
 

 In
 
 People v Sanchez,
 
 the order of the Appellate Term should be reversed, defendant’s motion to suppress denied, and the case remitted to Criminal Court, New York County, for further proceedings on the Criminal Court complaint.
 

 In
 
 People v Mims,
 
 the order of the Appellate Division should be reversed, defendant’s motion to suppress denied, and the case remitted to Supreme Court, New York County, for further proceedings on the indictment.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 In each case: Order reversed, etc.
 

 *
 

 Inasmuch as there was circumstantial evidence of communication between the two officers, we need not consider the People’s contention that the knowledge of a team of officers generally in communication may be aggregated to establish probable cause even in the absence of evidence of an express communication between them.