OPINION OF THE COURT
Peter J. Benitez, J.
*766 Defendant is charged in an information with criminal possession of a weapon in the fourth degree (three counts) and unlawful possession of marijuana. He moved to suppress the physical evidence recovered and a hearing was held on that motion. The People called Officer Carrero at the hearing and the defendant called his mother, Patricia Gordon. Subsequently this court, by written decision dated August 14, 2006, granted the People’s motion to reopen the hearing for the limited purpose of allowing the People to present evidence of the source of the 911 calls which generated the police officers’ response to defendant’s home. This court finds all the witnesses to be credible and makes the following findings of fact and conclusions of law.
Officer Carrero and his partner were on routine patrol in a marked police vehicle on July 10, 2005, when he heard the police dispatcher put out a call relating to shots having been fired. Officer Carrero heard several additional radio calls relating to that incident. At the reopened hearing the People introduced a Sprint report for the limited purpose of establishing the source of the 911 calls. That report shows that several callers who gave a name and telephone number called 911 in connection with shots having been fired. Then Officer Carrero heard a radio message that a suspect involved in the shooting was sitting on the porch in the front of a red house on Carlisle Avenue between 213th and 211th streets. That person was further described as a male, black, having an afro and wearing a black t-shirt. On cross-examination Officer Carrero was asked if he learned the source of the information regarding the presence of a suspect at the red house. Officer Carrero said that the dispatcher simply said the call came over 911 from a pizzeria on White Plains Road. Using the Sprint report that had been provided by the People, defense counsel established that earlier radio calls had reported that persons involved in the shooting had fled in a vehicle, were going in another direction, that the shooter had a red shirt, and that another person involved had a white shirt.
The Sprint report introduced at the reopened hearing reveals that the 911 call concerning a suspect being at the red house on Carlisle Avenue was from a male caller who did not identify himself and who did not state the basis for his information.[1] However, the Police Department 911 system did identify the call *767 as coming from a named pizzeria at an address on White Plains Road and the telephone number for that establishment was set forth in the report.
Officer Carrero went to 3553 Carlisle Avenue which was the only red house in the area described in the radio message. Two males were sitting on the porch in front of the house. One was defendant, a male, black, who had an afro and was wearing a black t-shirt. The evidence at the hearing established that a metal fence with a metal gate separated the house and its property from the public sidewalk and street. A walkway led to the front porch. The front of the house had a door with the house number on it. Inside that front door was a small vestibule. On the date in question, this front door was unlocked as the lock was broken. Inside the vestibule were three mailboxes regularly used by the mail carrier to deliver mail to the occupants. Three families resided in the house, defendant and his mother, defendant’s aunt, and defendant’s grandmother. Beyond the vestibule was another door with a lock that led into the house.
On July 10, 2005, Officer Carrero and his partner walked through the open gate and approached defendant and the other person on the porch. The officers frisked both individuals finding no weapons. Defendant was about two feet from the front door, which was open. Officer Carrero saw the vestibule inside the open front door and saw a closed barbeque grill inside the vestibule. Officer Carrero walked into the vestibule and reached to open the grill cover. As Officer Carrero did so, defendant fled, running off the porch and out the front gate. Officer Carrero opened the grill cover, saw three guns and marijuana inside and alerted the other officers present. Defendant was seized by other officers on the sidewalk two houses down the street.
Conclusions of Law
The analysis of whether the police had a legal basis to approach defendant, frisk him, enter the vestibule and open the grill begins with a determination as to whether the caller from the pizzeria was a citizen-informant or an anonymous tipster. The caller did not identify himself, did not give a call-back number and did not state the basis of his information. More *768 over, the call was from a commercial eating establishment. Accordingly, the police could not have readily determined the identity of the caller. Therefore, the call directing the police to the red house must be considered to have been an anonymous tip. Florida v J.L. (529 US 266 [2000]) held that, absent corroborating facts or circumstances, an anonymous tip does not provide reasonable suspicion that the described person is or has engaged in criminal activity. At most, an anonymous tip gives the police a common-law right to make an inquiry. In this case, there were no corroborating facts or circumstances observed by the responding officers beyond confirming that a person fitting the description given was in fact at the location given. The defendant’s flight from the porch, a factor that would normally provide corroborating circumstances, occurred after the officer’s seizure of his person and frisk of him. As was held in People v Moore (6 NY3d 496, 498 [2006]), “Defendant’s later conduct cannot validate an encounter that was not justified at its inception.”
Yet, the contraband was not recovered from defendant’s person. While the People argued that reasonable suspicion that defendant has engaged in criminal activity would have permitted a “frisk” of the grill as being within the grabable reach of defendant (see, People v Pugach, 15 NY2d 65 [1964]), as an alternative basis for upholding the officer’s search of the grill, the People argue that defendant did not have a reasonable expectation of privacy in the place searched. In People v Kozlowski (69 NY2d 761 [1987]), a police officer walked up defendant’s driveway, went onto the porch and knocked on the door based on the report of an eyewitness to defendant’s erratic driving which resulted in property damage. Defendant answered the door and the officer observed him to be intoxicated. Defendant made statements at the door admitting to causing the damage. In affirming defendant’s conviction and the denial of his motions to suppress, the Court, rejecting defendant’s claim that the police violated his constitutional rights in entering upon his property, stated:
“The police officer reached defendant’s front door by the means defendant had made available for public access to his house, and did not intrude into any area in which defendant had a legitimate expectation of privacy. Absent evidence of an intent to exclude the public, the entryway to a person’s house offers implied permission to approach and knock on *769 the front door.” (People v Kozlowski, supra at 763 [citations omitted].)
See, also the earlier case of People v Crapo (103 AD2d 943, 943 [3d Dept 1984]), holding that a police officer could walk up the driveway of defendant’s house and look through the window of the garage door where he observed defendant dismantling a motorcycle which was determined to have been stolen based on the principle that what the officer did was no more intrusive than allowed to be done by a “paperboy, garbage collector or door-to-door salesman.”
People v Kozlowski (supra) recognized that, while a person has a reasonable expectation of privacy in the curtilage of his house (Oliver v United States, 466 US 170 [1984]), absent efforts to exclude the public, a person has a reduced expectation of privacy in the driveway, walkway and porch of his home. Some courts have expressed this reduced expectation of privacy as based on an implied invitation allowing access by others and some have expressed it in terms of a lack of a reasonable expectation of privacy.[2] However phrased, the principle is that people expect that the public and, therefore, the police, in going to a house, will be on the pathways, driveways and porches leading to the front door of the house and will be able to observe what can be seen in open view. See, for example, State v Graffius (74 Wash App 23, 871 P2d 1115 [Div 1 1994]), which upheld the action of the officer looking into the partially open garbage can located on a walkway on defendant’s property. Yet, this court has found no case holding that the police have the right to open closed containers found on those walkways, driveways or porches of homes under the circumstances presented in this case.[3]
The reasonableness of a person’s expectation of privacy requires an analysis of whether that expectation was objectively one that society would accept as reasonable. (See, People v Ramirez-Portoreal, 88 NY2d 99 [1996].) Here, and normally, a person would reasonably expect that items placed in a closed container or in a closed barbe que grill would remain private even to persons visiting the front door and *770 entering the vestibule of the house in which the person lived. Accordingly, as the lock to the front door was broken and, for an undetermined period of time prior to defendant’s arrest, the mailboxes for the separate living quarters in the house were inside the open entryway, anyone who would visit the house could enter into that vestibule. So too could Officer Carrero. However, the police had no right to open the grill wherein they found the contraband as defendant retained a reasonable expectation of privacy in that grill and the police lacked a legal ground to open it.
Wherefore, defendant’s motion to suppress the weapons and marijuana is granted.

. Contrary to defendant’s contentions, many of the abbreviations used in the Sprint report are common abbreviations that do not require an expert to decipher. Additionally, the Sprint report was not admitted to prove the *767 substance of the information conveyed to the 911 operator, but only to establish the identity of the callers. However, the substance of the information conveyed in the call, as set forth in the Sprint report, can be used to distinguish between the several callers who made 911 calls regarding this incident.

. A detailed discussion of this reduced or limited expectation of privacy and citations to illustrative cases across the country recognizing this principle of Fourth Amendment jurisprudence can be found in Robinson v Commonwealth (47 Va App 533, 625 SE 651 [2005 en banc]).

. Cases dealing with items placed in garbage cans located at the curb for disposal are distinguishable.