■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARK JOHNSON, Appellant. [839 NYS2d 741]—

Appeal from judgment, Supreme Court, New York County (Charles H. Solomon, J., at summary denial of suppression motion; Philip M. Grella, J., at trial and sentence), rendered September 9, 2004, convicting defendant of criminal possession of a weapon in the second degree and two counts of criminal possession of a weapon in the third degree, and sentencing him as a second felony offender to concurrent terms of 13 years, 7 years and 3¹/₂ to 7 years, respectively, held in abeyance and the matter remitted to Supreme Court, New York County, for a *Mapp/Dunaway* hearing.

Defendant was charged under indictment 4367/03 with criminal possession of a weapon in the third degree (loaded firearm). The court granted his motion for a *Mapp/Dunaway* hearing. The People thereafter sought a superseding indictment. Defendant testified before that grand jury and denied possessing a gun at the time of his arrest. That grand jury voted out indictment 4367A/03, charging defendant with criminal possession of a weapon in the second degree (loaded firearm with intent to use it) and criminal possession of a weapon in the third degree (serial numbers defaced). The People moved for reconsideration

of the court's order granting a suppression hearing in light of defendant's grand jury testimony, arguing that defendant lacked standing to challenge the admissibility of the gun because he denied possessing it. The court summarily denied the defendant's motion to suppress the gun.

At the trial of this matter, Police Officers Cawley, Gordon and Delmar testified that shortly before 8:30 P.M. on August 12, 2003, they received a radio report of a dispute involving guns at an apartment building in the Jacob Riis Houses. Upon arrival, they found the scene "chaotic," with people running from the lobby and up the stairs. Other officers were also entering the building. Officers Cawley and Gordon went up the staircase to the third floor where they heard banging and a man repeatedly yelling "let me in." With weapons drawn, the officers opened the door to the hallway and observed defendant banging frantically on the door to apartment 3G and yelling "let me in." Cawley pointed his gun at defendant and told him not to move. When defendant lowered his arm toward his waist, Cawley believed he might have a gun so he told defendant to put his hands on the wall. Defendant complied and Cawley frisked him. During the frisk, Cawley felt a "very hard object" in defendant's waistband area, which turned out to be a loaded 9 millimeter semiautomatic pistol with the serial numbers defaced. Defendant was placed on the ground and handcuffed.

Defendant testified before the grand jury that on the date in question, he was going to visit his friend Leana Perillo, who lived in apartment 2A of the building. When she did not answer the door, he walked up the stairs to Martha Echavaria's apartment, 3H. Before he knocked on her door, the police appeared with guns drawn and ordered him to "freeze" and put his hands up. He complied but Officer Cawley came up to him and pointed a gun at his head. Cawley then holstered his gun but Officer Gordon pointed his gun at defendant's back while Cawley frisked defendant. Defendant claims Cawley then threw him on the floor and handcuffed him. Both officers then dragged him down the hallway. He was subsequently taken to the precinct where he claims he first learned that he had been charged with possession of a gun. Defendant maintains he did not possess a gun on August 12, 2003.

Defendant's moving papers submitted under the original indictment averred that he was searched by a police officer without probable cause or other legal justification. The People did not submit opposition to this motion, and a hearing was ordered. However, the People sought to revisit this issue upon the superseding indictment, arguing that defendant's claim that

he never possessed a weapon deprived him of standing to move to suppress the gun allegedly seized from his person.

A defendant seeking suppression of evidence has the burden of establishing standing by demonstrating a legitimate expectation of privacy in the premises or object searched (*People v Ramirez-Portoreal*, 88 NY2d 99, 108 [1996]). In the context of a motion to suppress tangible evidence, a defendant may rely on the People's proof to demonstrate standing (*id.* at 109). Defendant could meet his evidentiary burden by utilizing a police officer's statement that the tangible property in question was seized from his person. "Defendant was therefore not required to personally admit possession of the contraband in order to comply with the factual pleading requirement of CPL 710.60" (*People v Burton*, 6 NY3d 584, 589 [2006]).

Defendant's motion to suppress states that "while visiting a friend at the premises, 118 Avenue D, [he] was searched by the police without any probable cause, or justification, at which time the police recovered a gun from the possession of the defendant." Although in his grand jury testimony defendant denied ever possessing a gun on the night in question, the police aver that the gun was seized from his waistband area.* Moreover, defendant claims he was doing nothing illegal or improper when confronted by the police with drawn weapons. While the normal questions of credibility arise between the two versions of the event leading to defendant's arrest, defendant's claim "questions whether police action was legally authorized at its inception, and in this situation a hearing is required to determine, as a factual matter, whether the defendant engaged in suspicious or unlawful conduct giving rise to probable cause justifying the search" (*id.* at 590). It was thus improper to deny defendant's motion summarily.

Accordingly, defendant's appeal should be held in abeyance and the matter remanded for a hearing on his motion to suppress physical evidence. Concur—Tom, J.P., Mazzarelli, Friedman, Williams and Sweeny, JJ.

---

* The People contend that this testimony from defendant distinguishes this case from *Burton*. We cannot state that *Burton*'s holding is so limited.