ROTHENBERG, J.
Luis Montes-Valeton (“the defendant”) appeals his conviction and sentence for driving under the influence causing serious bodily injury. Specifically, the defendant challenges (1) the admission of the results of a blood alcohol test performed on blood samples obtained from him at the scene of a single-vehicle accident that resulted in the death of a passenger in the vehicle being driven by the defendant, and (2) the admission of autopsy photographs of the victim into evidence. Because we find no error in the admission of the blood test results, and that any error in the admission of the autopsy photographs was harmless beyond a reasonable doubt, we affirm.

Admission of the Blood Test Results

The defendant raises two points of error regarding the admissibility of the blood test results. First, the defendant contends the trial court erred by admitting the blood test results because the State failed to present evidence that the blood was drawn by a qualified person pursuant to section 316.1933(2)(a), Florida Statutes (2008).[1] At trial, defense counsel failed to make this specific argument when objecting to the admission of the blood test results. Therefore, this argument was not preserved for appellate review. See Till *206 man v. State, 471 So.2d 32, 35 (Fla.1985) (“In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.”); Fike v. State, 4 So.3d 734, 737 (Fla. 5th DCA 2009) (“[T]he issue was not preserved for appellate review because the specific objection complained of on appeal was not raised below.”); Perera v. State, 873 So.2d 389, 391 (Fla. 3d DCA 2004) (“To preserve an issue for appeal, counsel must make a specific objection to the admission of the evidence.”).
In Jackson v. State, 738 So.2d 382, 386 (Fla. 4th DCA 1999), and then in Filan v. State, 768 So.2d 1100, 1101-02 (Fla. 4th DCA 2000), the Fourth District Court of Appeal specifically addressed the sufficiency, for preservation purposes, of an objection based on “improper predicate” or “lack of foundation” and held that such a general objection lacks the requisite specificity to preserve an objection for appellate purposes. We entirely agree with the Fourth District’s holding in Filan.
An issue or objection is “preserved” within the meaning of the statute if it was timely raised and ruled on by the trial judge and if the objection was “sufficiently precise that it fairly apprised the trial court of the relief sought and the grounds therefore.” § 924.051(l)(b), Fla. Stat. (1999).
The evidence code also requires precision in objections. Section 90.104(l)(a), Florida Statutes (1999), provides that a court may reverse a judgment on the basis of admitted evidence when a “substantial right” of a party is affected and there is a timely objection or motion to strike in the record “stating the specific ground of objection if the specific ground was not apparent from the context.”
In Jackson v. State, 738 So.2d 382, 386 (Fla. 4th DCA 1999), we held that the “objection ‘lack of foundation,’ like its first cousin ‘improper predicate,’ is not a ‘specific ground of objection’ within the meaning of section 90.104(l)(a).” Jackson derives from the value that a trial should not be reduced to a guessing game:
The general, non-specific objection in this case — “lack of foundation” — did not alert the state or the trial court as to what portion was missing from the foundation for the admission of business records under section 90.803(6)(a). With a specific objection not only can the trial court make an intelligent and informed decision but it would also give the state an opportunity to correct the defects, where possible, by asking additional questions of the witness or calling an additional witness who might be able to correct the defects.
Filan, 768 So.2d at 1101-02 (quoting Jackson, 738 So.2d at 386).
In the instant case, the defendant’s counsel objected to the admission of the blood evidence based on “improper predicate.” [2] Because section 316.1933 includes many requirements, the lack of specificity did not put the trial court or the State on notice as to the grounds for the objection to enable the trial court to make an “informed decision” or for the State to cure the alleged defects. Although defense counsel did eventually specify the grounds for his objection when he later moved for a *207 judgment of acquittal, his argument came too late, as the evidence had already been admitted. The purpose of a motion for judgment of acquittal “is to test the legal sufficiency of the evidence presented by the State,” Hernandez v. State, 117 So.3d 778, 785 (Fla. 3d DCA 2013), not to object to evidence that was already admitted.
Second, the defendant argues the trial court erred by admitting the blood test results because the law enforcement officer did not have probable cause to believe the defendant was under the influence of alcoholic beverages before requiring the defendant to submit to the blood draw as required by section 316.1933(l)(a). As the record reflects that the law enforcement officer did not require the defendant to submit to the blood test, but rather the law enforcement officer obtained the blood sample after the defendant voluntarily consented to the blood draw, we find that this argument lacks merit. See State v. Geiss, 70 So.3d 642, 648 (Fla. 5th DCA 2011) (noting that “blood test results obtained by actual consent, independent of the implied consent statute [section 316.1932], are admissible”); see also State v. Murray, 51 So.3d 593, 595-96 (Fla. 5th DCA 2011); Kujawa v. State, 405 So.2d 251, 252 (Fla. 3d DCA 1981) (holding that the implied consent statutes are irrelevant when the defendant gives actual consent to a blood or breath test).
However, even if the defendant had not “voluntarily” consented to the blood draw, we conclude that the blood draw was also supported by probable cause, and the motion to suppress was therefore properly denied. See State v. Catt, 839 So.2d 757, 759 (Fla. 2d DCA 2003) (finding probable cause to compel a blood draw based on a traffic accident involving serious bodily injury where the vehicle was driven by the defendant whose breath smelled of alcohol); State v. Kliphouse, 771 So.2d 16, 21 (Fla. 4th DCA 2000) (concluding that evidence that the driver caused a serious or fatal accident coupled with evidence that his breath smelled of alcohol was enough to provide the officer with probable cause to believe the person had committed a DUI offense and therefore to request a blood test under section 316.1933(1)); State v. Silver, 498 So.2d 580, 581 (Fla. 4th DCA 1986) (reversing the trial court’s order suppressing the results of the defendant’s blood alcohol test and finding that where the defendant was the driver of a vehicle involved in a two-vehicle accident resulting in a fatality and the odor of alcohol was on the defendant’s breath, probable cause existed to arrest the defendant).
Additionally, although Sergeant Luis Tejera is the officer that smelled the odor of alcohol coming from the defendant’s breath and determined that the defendant was the driver of the vehicle involved in this single-vehicle accident in which the passenger was ejected and was transported from the scene in serious condition, under the fellow officer rule, Trooper Molina had probable cause to request that the defendant provide the blood drawn by fire rescue. The fellow officer rule provides that the arresting officer or, as here, the officer that requested the blood draw, may rely on the collective knowledge of the police officers involved in the investigation. Voorhees v. State, 699 So.2d 602, 609-10 (Fla.1997).
The Florida Supreme Court in Voo-rhees held that:
In broad terms, the collective knowledge of police investigating a crime is imputed to each member under a rule of law often called the “fellow officer rule” or “collective knowledge doctrine.” The exact contours of the rule are not entirely clear. Florida courts have tended to *208 frame this doctrine in very sweeping terms, ....
Id. at 609 (quoting Johnson v. State, 660 So.2d 648, 657 (Fla.1995)). The Voorhees Court also specifically noted the holdings in United States v. Butler, 74 F.3d 916, 921 (9th Cir.1996), and People v. Ramirez-Portoreal, 88 N.Y.2d 99, 643 N.Y.S.2d 502, 666 N.E.2d 207, 215 (1996). Voorhees, 699 So.2d at 609-610. The Voorhees Court noted that in Butler, the Ninth Circuit found that “probable cause can be demonstrated through the collective knowledge of police officers involved in an investigation even if some of the information known to other officers is not communicated to the arresting officer.” Voorhees, 699 So.2d at 610 (citing Butler 74 F.3d at 921). Voo-rhees further recognized that in Ramirez-Portoreal, the Court of Appeals of New York found that the fellow officer rule applies even if the arresting officer lacks independent personal knowledge sufficient to establish probable cause. Voorhees, 699 So.2d at 609 (citing Ramirez-Portoreal, 643 N.Y.S.2d 502, 666 N.E.2d at 215). The arrest is lawful if the officer acts upon the direction of or as a result of the communication with another officer so long as the police as a whole are in possession of information constituting probable cause. Voorhees, 699 So.2d at 609; see also Strickroth v. State, 963 So.2d 366, 368 (Fla. 2d DCA 2007) (noting that the collective knowledge of the police investigating a crime is imputed to each member under the fellow officer rule, which can involve direct communications between officers who have sufficient information and the officer who stops the suspect, or it can involve general communications among officers when at least one officer possesses the required level of suspicion); State v. Bagley, 844 So.2d 688, 690 (Fla. 3d DCA 2003) (reversing the trial court’s order suppressing the evidence and finding that the trooper who stopped the van had probable cause based on the combined knowledge of the officers who were investigating the crimes and the BOLO they issued based on the fellow officer rule); Smith v. State, 719 So.2d 1018, 1022 (Fla. 3d DCA 1998) (finding that “[t]he ‘fellow officer’ rule is applicable whether the communication is from a superior, a fellow officer with the same police department, between different agencies or agencies at different levels within a state, between officials in different states, [or] between federal and state or local authorities[,]” and concluding that the knowledge of one officer is presumed to have been shared by others cooperating in an investigation, and thus the officer who stopped Smith was entitled to assume under the fellow officer rule that the officer requesting aid had sufficient information to support the stop). We, therefore, find no error in the admission of the blood test results in this case.

Admission of the Autopsy Photographs

The defendant also contends the trial court abused its discretion by allowing the State to introduce autopsy photographs of the victim into evidence. Although we agree that the trial court abused its discretion, we conclude that the error was harmless beyond a reasonable doubt.
Prior to the introduction of the autopsy photographs, the parties examined the medical examiner outside of the jury’s presence. The medical examiner explained that, even if the photographs were not introduced, he could testify as to the cause of the victim’s death and to what the photographs would show: bleeding beneath the defendant’s scalp and a fracture to his skull. Moreover, the record reflects that defense counsel did not argue, or even imply, that the victim’s injuries and subsequent death were not as a result of the accident. We therefore agree with the *209 defendant that the probative value of the photographs was outweighed by its prejudicial effect and, thus, the trial court abused its discretion by introducing the photographs into evidence. See Czubak v. State, 570 So.2d 925, 929 (Fla.1990) (finding that the trial court erred by admitting autopsy photographs that had “little or no relevance”).
However, we conclude the error was harmless in light of the overwhelming evidence against the defendant — including evidence showing that the defendant’s blood alcohol level was 0.156 — and based on the jury’s verdict. The jury returned a verdict finding the defendant guilty of the lesser-included offense of driving under the influence causing serious bodily injury rather than DUI manslaughter, despite the victim’s death. Therefore, there is no reasonable doubt that the improper admission of the photographs did not affect the jury’s verdict. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986) (requiring the reviewing court to search the whole record and determine whether there is any reasonable doubt that the error played no role in the conviction).
Affirmed.

. Section 316.1933(2)(a) provides in relevant part:
Only a physician, certified paramedic, registered nurse, licensed practical nurse, other personnel authorized by a hospital to draw blood, or duly licensed clinical laboratory director, supervisor, technologist, or technician, acting at the request of a law enforcement officer, may withdraw blood for the purpose of determining the alcoholic content thereof or the presence of chemical substances or controlled substances therein....

. Defense counsel also objected based on failure to establish chain of custody, an issue he has properly abandoned on appeal.