People v Laspesa (2025 NY Slip Op 51096(U))

[*1]

People v Laspesa

2025 NY Slip Op 51096(U)

Decided on July 14, 2025

Supreme Court, Erie County

Calvo-Torres, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 14, 2025
Supreme Court, Erie County

People of the State of New York

against
Gage Laspesa

Ind. No. 73026-24/001

MICHAEL J. KEANE
Erie County District Attorney
DANIEL MORRIS, Esq.
Assistant District Attorney
Appearing for the People
ANDREW STEINHAUS, Esq.
Appearing for the Defendant

Betty Calvo-Torres, J.

The defendant moves to suppress physical evidence and statements he made to police at the time of his arrest. The request to suppress physical evidence is denied, and the request to suppress statements is granted in part and denied in part. The Court makes its findings after considering the testimony and evidence at the suppression hearing of May 7, 2025, the People's Memorandum of Law dated June 20, 2025, the defendant's undated Post Hearing Submission, the People's memorandum letter dated June 27, 2025, and the defendant's Supplemental Post Hearing Submission dated July 1, 2025.
Mapp
At the suppression hearing, Lieutenant Peter Smith of the Evans Police Department testified that on March 25, 2024, at about 9:29 AM, he was on duty and on patrol when he received a call through dispatch. The call indicated that there was a 911 complaint of a man waving a gun in the area of North Main Street and Lake Street in the Village of Angola. The call gave a description of a white male wearing a jacket and jeans. This information originated from an anonymous complainant. Lieutenant Smith testified that he responded to the call by going to the area of North Main Street and Lake Street. He stated that when he arrived, he didn't see anyone. Lieutenant Smith testified that he then drove north on Lake Street and saw a male near 53 Lake Street. He stated that he turned around to get a better look. Lieutenant Smith testified that he saw that the individual, who was the only person in the area, was wearing a multi- colored jacket and what he believed to be jeans. He stated that he later learned that the person was actually wearing gray sweatpants. He testified that he turned his vehicle around again and came to 53 Lake Street, where he saw the man walking towards the backyard. Lieutenant Smith then exited his patrol vehicle and radioed to other officers to inform them what he had seen. He testified that the defendant looked right at him and walked away.
Lieutenant Smith stated that he heard the suspect start running through the crunchy snow. He testified that he heard fast footsteps in the snow and followed footprints until he heard Chief Gregory Szarowicz apprehend the suspect. Lieutenant Smith stated that when he caught up with [*2]Chief Szarowicz, he saw that the person being detained was the same person he had been pursuing. Lieutenant Smith testified that he recognized the individual being detained as the defendant, Gage Laspesa, who he knew from previous police encounters. Lieutenant Smith stated that the defendant was patted down and detained. Lieutenant Smith then backtracked where he had seen the defendant and found footprints in the snow. He followed the footprints and saw a pistol in a raised flower bed along the path of the footprints.
Investigator Michael Connors of the New York State Police testified that he was travelling in the Village of Angola when he heard the radio call of a man with a handgun in the area of North Main Street. He testified that he arrived shortly after Lieutenant Smith and made his way to Lake Street. Investigator Connors testified that he retraced footprints in the snow matching the defendant's shoes. He stated that while retracing the footprints, he found a pistol in a flower box and pointed it out to Lieutenant Smith, who recovered it.
The defendant argues that police had insufficient cause to pursue him on foot, and that the gun should be suppressed because its abandonment was the result of the unlawful pursuit. The Court disagrees. The defendant argues that his flight from police alone is insufficient to give police sufficient cause to pursue him. However, police had more cause to pursue the defendant than his mere flight. Police also had knowledge of a 911 call of a white male wearing a jacket and jeans waving a gun in the area of North Main Street and Lake Street. Upon arriving at the scene, Lieutenant Smith stated that he encountered only two people. The first was the defendant, who matched the description of the 911 caller. Lieutenant Smith testified that it appeared the defendant was wearing jeans, although it turned out he was wearing gray sweatpants. Lieutenant Smith stated that the only other person he saw was an older male resident who did not match the description given by dispatch. The credible proof at the hearing showed that the defendant looked at Lieutenant Smith, walked away, and then was heard running away. "[A] defendant's flight in response to an approach by police, combined with other specific circumstances indicating that the suspect may be engaging in criminal activity may give rise to reasonable suspicion, the necessary predicate for police pursuit", People v Sierra, 83 NY2d 928, (see also People v Anderson, 217 AD3d 1559).
In the present case, the defendant's flight from police, coupled with police knowledge of a 911 report of a man matching the defendant's description was waving a gun in the area, gave police reasonable suspicion to pursue. The Court finds that the information contained in the radio dispatch, plus the defendant's flight, gave officers reasonable suspicion that the defendant had committed, or was committing a crime, People v DeBour, 40 NY2d 210. The crime in this case was criminal possession of a weapon. Therefore, the stop and detention of the defendant by police was lawful.
The Court further finds that since the stop and detention of the defendant was lawful, the search for and seizure of the weapon was also lawful. The fact that the weapon was found along the path taken by the defendant in his flight from police, indicates to the Court that it was discarded in an attempt to evade prosecution. "[I]t cannot be said that the abandonment was 'coerced or precipitated by unlawful police activity', People v Ramirez-Portoreal, 88 NY2d 99, (see also People v Stevenson, 273 AD2d 826). Therefore, there is no basis to suppress the weapon.
Accordingly, the defendant's motion to suppress the weapon is DENIED.
Huntley/Dunaway
The defendant argues that statements he made to police at the time he was detained, then [*3]placed under arrest, should be suppressed because they were the product of an unlawful detention. The Court disagrees. As set forth above, police had sufficient cause to detain the defendant. Because police initially had reasonable suspicion to detain the defendant, then had probable cause to arrest him after the weapon was recovered, there is no basis to suppress the defendant's subsequent statements as the product of an illegal detention, Stevenson, supra.
Evidence at the hearing, including body worn camera video, showed that the defendant was in custody before making any statements. He was brought to the ground by officers and immediately handcuffed. The defendant was then questioned by Lieutenant Smith. He was asked whether he had a weapon, whether he had been in an argument with someone, and where he was coming from and going to. Because the questioning was a custodial interrogation, Miranda warnings were required. No such warnings were given. Therefore, the motion to suppress statements made by the defendant to Lieutenant Smith is GRANTED.
Additional statements were made by the defendant to Lieutenant Patrick Atler of the Town of Evans Police Department. A body worn camera video recording of these statements was received into evidence as People's exhibit #2 at the hearing. This recording shows that Lieutenant Adler asked the defendant several questions, including whether the defendant had been walking around with a gun, if he had been fighting with somebody, and where he had found the gun. In response to these questions, the defendant first denied having a gun, then stated that he found the gun in the village in some garbage. These questions and answers begin at about the 3:17 mark of the recording, and end at about 4:17. Lieutenant Atler is seen to leave the patrol vehicle at the end of this period. The defendant was in custody in handcuffs and in a patrol vehicle at the time of this questioning. The defendant had not been given Miranda warnings. Therefore, the motion to suppress those statements made by the defendant to Lieutenant Atler is GRANTED.
The body worn camera recording shows that Lieutenant Atler returned to the patrol vehicle at about the 5:29 mark. Lieutenant Atler opened the door of the vehicle, and the defendant began speaking spontaneously without any questions being asked. In sum, the defendant stated that he found the gun in the village. He stated that somebody was running away, and the defendant grabbed the gun out of the garbage. He stated that he found it but was not waving it around. The defendant stated that the Lieutenant should check camera footage in the village. The defendant said that he found the gun on top of a garbage can on top of somebody's garbage. These statements end at 6:25.
The Court finds that the statements made by the defendant to Lieutenant Atler from the 5:29 mark of the recording to the 6:25 mark were spontaneous and made without apparent external cause, People v Rivers, 56 NY2d 476. The Court further finds that no force was used by any officer against the defendant. The evidence at the hearing established not only that no force was used, but also that no threats or promises were made, and there was no coercion by officers. The Court finds that, given the totality of the circumstances, these statements were voluntary, People v Anderson, 42 NY2d 35. Accordingly, the motion to suppress the spontaneous statements made by the defendant to Lieutenant Atler is DENIED.
Grand Jury Attendance and Voting
The defendant contends in his Omnibus motion dated March 25, 2025, that there were improprieties in grand jury attendance and voting. After an in camera review of the grand jury attendance and voting records, the Court finds no irregularities. Therefore, the defendant's motion to dismiss the indictment is DENIED.
This constitutes the DECISION of the Court, and it is so ORDERED.
Dated: July 14, 2025
Buffalo, NY
HON. BETTY CALVO-TORRES, A.S.C.J.