■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TIMOTHY WASHINGTON, Appellant. [918 NYS2d 485]—

Defendant was a passenger in a car that the police lawfully stopped. After the police removed the occupants from the car and frisked them, an officer leaned into the car and saw a revolver, which he seized. Another officer had already obtained the driver's consent to search the car. However, the hearing evidence is clear that, at the time of the search, the searching officer was not aware of the consent. The officer who obtained the driver's consent neither communicated that fact to the searching officer, nor otherwise directed him to search the car.

The hearing court found that the seizure of the revolver could not be justified under the plain view doctrine because the officer saw it only after leaning into the car. Instead, the court upheld the search on the sole basis of consent, concluding that the driver's consent justified the search even though it was not communicated to the officer who conducted the search. This was error. Although the existence of the communication may be established by inference (see People v Gonzalez, 91 NY2d 909, 910 [1998]), imputation of one officer's knowledge to another requires an actual communication between the officers (see People v Brnja, 50 NY2d 366, 373 n 4 [1980]; People v Skinner, 220 AD2d 350 [1995], lv denied 87 NY2d 1025 [1996]).

As alternative grounds for affirmance, the People argue, as

they did at the suppression hearing, that the car occupants' furtive conduct in the back seat, upon the officers' approach, provided the officers with a "reasonable objective basis" to make a protective sweep of the back of the car to search for weapons (*see People v Mundo*, 99 NY2d 55, 57-59 [2002]; *People v Anderson*, 17 AD3d 166, 167-168 [2005]). Although there was testimony at the suppression hearing on the issue, it was not resolved by the court. We therefore hold the case, reserve decision, and remit the matter to Supreme Court to make findings of fact with respect to the issue based upon the evidence presented at the suppression hearing (*see People v LaFontaine*, 92 NY2d 470, 474-475 [1998]; *People v Jones*, 39 AD3d 1169 [2007]; *People v McDonnell*, 27 Misc 3d 56 [App Term, 2d Dept 2010]). Concur—Andrias, J.P., Friedman, Acosta and DeGrasse, JJ.

McGuire, J., dissents in a memorandum as follows: I respectfully dissent. The majority's position vindicates no right of defendant but permits fortuity to undermine the public's compelling interest in the enforcement of the criminal law. Consider the following not implausible hypothetical. The owner of a house in which a murder suspect is a guest not only tells investigating detectives at the police station that they are free to search the house, he or she also executes a written consent. Before the detectives get to the house, a police officer securing the house enters it and discovers the murder weapon in the erroneous belief that exigent circumstances supported the entry. Under the majority's view of the law, the weapon would have to be suppressed. Indeed, it would have to be suppressed if the house was owned by the murder suspect and he or she consented to the search.

Regardless of whether the officer who seized the gun had a lawful basis for leaning into the car, I would uphold the seizure because another officer already had obtained the driver's consent to search the car. Because the driver had given his consent, defendant was not aggrieved by any unlawful conduct of the seizing officer. That the consent had not been communicated to that officer does not make a difference because "the exclusionary remedy [is limited] to persons whose own protection has been infringed by the search and seizure" (*People v Wesley*, 73 NY2d 351, 355 [1989]; *see also Rakas v Illinois*, 439 US 128, 134 [1978] [holding that "it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the (exclusionary) rule's protections"]; *cf. People v Horowitz*, 21 NY2d 55, 60 [1967] [upholding search because "it is not necessary for the officer making the arrest . . . to be, himself, in possession of information sufficient to constitute

probable cause . . . provided that the police as a whole were in possession of information sufficient to constitute probable cause"]). Finally, although I need not reach the issue, it is far from clear that a search requiring probable cause occurred merely because the officer leaned into the car, breaking the plane of the doorwell, before seeing the butt of the gun on the floor protruding from under the driver's seat (*compare People v March*, 257 AD2d 631, 633 [1999], *lv denied* 93 NY2d 973 [1999] ["officer did nothing more intrusive than step into the van . . . in order to more readily observe its interior, and the court accepted as credible his testimony that the butt of the gun was in plain view"], *with People v Hernandez*, 238 AD2d 131, 132 [1997] [improper search to lean "deeply enough inside" car "to observe an item concealed up under or behind the dashboard"]; *see also United States v Snow*, 44 F3d 133, 135 [2d Cir 1995] [search entails "looking through, rummaging, probing, scrutiny, and examining internally" (internal quotation marks omitted)]).