People v Palacios

2026 NY Slip Op 02360

April 16, 2026

Court of Appeals

Halligan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People & c., Respondent,

v

Miguel Angel Palacios, Appellant.

Decided on April 16, 2026

No. 28

David Fitzmaurice, for appellant.

William H. Branigan, for respondent.

Halligan, J.

[*1]

The defendant pleaded guilty to second-degree arson after the trial court denied his motion to suppress a statement made to police following his arrest. At the suppression hearing, a New York City Police Department (NYPD) detective testified that he created a "probable cause I-card" for the defendant based on a conversation with a witness who reported the arson, but the arresting officers did not testify and the People presented no other evidence regarding the circumstances of the arrest. Although the "fellow officer rule" permits an arresting officer to rely on information communicated by another officer in establishing probable cause, the People must put forth evidence demonstrating that the arresting officer received such information and relied on it in making the arrest. Here, the People failed to meet that burden and, accordingly, the defendant's statement should have been suppressed. We therefore reverse.

I.

In February 2017, an NYPD detective spoke with a complaining witness about an alleged arson in Queens. According to the witness, he became trapped on the second floor of an abandoned building after two men lit a mattress on fire in the building's stairwell, and he was forced to run through the burning mattress to escape. The witness told the detective that one of the people who set the mattress on fire went by the name "Lagrimas." The detective knew that defendant Miguel Angel Palacios used this nickname and showed the witness a photo of the defendant as part of a photo array. The witness identified the defendant, and the detective then created a "probable cause I-card" for the defendant. The defendant does not contest that the detective had probable cause to arrest him when the I-card was created.

The next day, patrol officers arrested the defendant and brought him to the detective's precinct, where he was questioned about the arson. As the defendant was also a suspect in a recent unrelated robbery, another detective at the same precinct who was investigating that crime joined the interview. The interview was videotaped and conducted entirely in Spanish. The defendant made an incriminating statement and was later charged with assault in the first degree and arson in the second degree.

The defendant moved to suppress the statement as the fruit of an unlawful arrest and requested a hearing on probable cause and the voluntariness of his statement. At the hearing, the People called only one witness, the detective who created the I-card. That detective testified about his conversation with the complaining witness and his creation of a probable cause I-card for the defendant. According to the detective, the NYPD has "different types of I[-]card[s]," and the one he activated for the defendant was a "probable cause I[-]card." He explained that this type of I-card is an internal NYPD record that "lets everybody in the department know that . . . there's probable cause to arrest this individual." The I-card was not entered into evidence and the detective did not explain what information it contained, how other officers were able to access it, or whether the arresting officers had actually done so. Nor did the detective testify about the circumstances of the defendant's arrest, beyond stating that he was "apprehended" "by patrol" and "brought back to the [detective's precinct] squad and put into a cell."

The People introduced as evidence the video of the detectives' interview with the defendant and provided the court with a transcript that they claimed translated the interview into English. The transcript was prepared by an unidentified person in the District Attorney's office and did not contain a statement certifying its accuracy. Defense counsel objected to the transcript being used as evidence or an aid in interpreting the videos. Ultimately, the court used it as an aid but did not enter it as an exhibit.

The court denied the suppression motion. It concluded that the detective had probable cause to arrest the defendant and, under the fellow officer rule, communicated that probable cause to the arresting officers by creating the I-card despite the absence of any evidence showing the content of the I-card, the identity of the arresting officers, whether they knew about the I-card, or why they arrested the defendant. The court further determined that the use of the English-language transcript did not preclude the People from showing that the defendant was properly administered Miranda warnings.

The defendant subsequently pleaded guilty to second-degree arson and was sentenced to 11 years in prison followed by 5 years of post-release supervision.

The Appellate Division affirmed. The Court concluded that the detective's testimony "mandated the inference that the defendant was arrested with probable cause by another officer, based on the issuance of [the] I-card, and the defendant offered no evidence to support his speculation to the contrary" (234 AD3d 716, 717 [2d Dept 2025], quoting People v Wayman, 188 AD3d 538, 539 [1st Dept 2020] [internal quotation marks and brackets omitted]). The Court also held that the defendant knowingly, voluntarily, and intelligently waived his Miranda rights (see id.).

A Judge of this Court granted the defendant leave to appeal (43 NY3d 1011 [2025]).

II.

When a defendant challenges the legality of their arrest in a suppression motion, it is the People's burden to "come forward with evidence establishing probable cause to arrest" (People v Ramirez-Portoreal, 88 NY2d 99, 113-114 [1996]; see also People v Balkman, 35 NY3d 556, 559 [2020]; People v Berrios, 28 NY2d 361, 367 [1971]). Although probable cause determinations typically present a mixed question of law and fact, "when an issue arises as to the standard by which probable cause is measured—the minimum showing necessary to establish probable cause—a question of law is presented for review" (People v Nektalov, 42 NY3d 363, 367 [2024], quoting People v McRay, 51 NY2d 594, 601 [1980]).

The People rely on the "fellow officer rule" in seeking to establish probable cause for the defendant's arrest. Under the fellow officer rule, "even if an arresting officer lacks personal knowledge sufficient to establish probable cause, the arrest will be lawful if the officer 'acts upon the direction of or as a result of communication with a superior or fellow officer or another police department provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest' " (Ramirez-Portoreal, 88 NY2d at 113 [internal brackets omitted], quoting People v Horowitz, 21 NY2d 55, 60 [1967]). The fellow officer rule "has been employed in a variety of circumstances and through the use of various modes of communication" (People v Rosario, 78 NY2d 583, 588 [1991]). For example, we have applied the fellow officer rule to uphold arrests where the arresting officer acted on a radio transmission from another officer providing a description of an individual who had [*2]just purchased illegal drugs (see People v Ketcham, 93 NY2d 416, 418 [1999]; People v Maldonado, 86 NY2d 631, 633 [1995]; cf. People v Lypka, 36 NY2d 210, 213-214 [1975] [observing that an officer may "act on the strength of . . . a telephone or teletype alert from a fellow officer or department" but remitting to County Court to determine whether the sending agency had probable cause]).

Like a radio transmission or phone call, a mode of communication such as an NYPD I-card, as broadly described by the detective at the hearing, may be used to communicate probable cause from one officer to another. As with any communication, the People must adduce evidence that the arresting officer received the information communicated by the I-card and relied on it in arresting the defendant (see People v Gonzalez, 80 NY2d 883, 885 [1992] [suppressing evidence where "the information obtained . . . from his fellow detectives was not something on which (the arresting detective) relied in taking action"]; People v Powell, 101 AD3d 756, 758 [2d Dept 2012] ["the People did not present evidence to establish that the officers who stopped and detained the defendant and his codefendant actually received any information from another officer who may have possessed probable cause"]; People v Washington, 82 AD3d 570, 570 [1st Dept 2011] ["Although the existence of the communication may be established by inference, imputation of one officer's knowledge to another requires an actual communication between the officers" (internal citation omitted)]).

Although it is "better practice to elicit direct evidence of a communication between the officers," the suppression court may infer "from the circumstantial evidence presented" that one officer conveyed probable cause information to another (Ramirez-Portoreal, 88 NY2d at 114). For example, in Ramirez-Portoreal, the defendant was arrested after two officers conducted surveillance together on a rooftop. One officer observed the defendant engaged in illegal activities establishing probable cause; the second officer, who arrested the defendant, did not personally observe the defendant's conduct (see id.). In light of the first officer's testimony that both officers "were working together on a drug interdiction assignment, that they left the roof together, drove around the block in one car, and that when they arrived at defendant's location [the arresting officer] exited the car and immediately detained defendant," we concluded that "[n]o other inference may be drawn from these facts but that [the arresting officer] was acting at the direction of, or upon knowledge shared by, [the first officer]" (id.; see also People v Midgette, 115 AD3d 603, 605 [1st Dept 2014] ["the People met their burden to establish the lawfulness of the arrest through circumstantial evidence warranting the conclusion that the nontestifying apprehending officer acted lawfully"]; People v Johnson, 281 AD2d 183 [1st Dept 2001] ["Although the People neglected to elicit the fact that defendant's arrest was based on a communication between the observing and arresting officers, the circumstantial evidence warrants such a conclusion"]).

Whether the People presented sufficient evidence of a communication under the fellow officer rule is a fact-specific question that requires examination of the record before the suppression court. Here, the People presented no direct evidence that prior to arresting the defendant, the arresting officers were aware of the I-card and relied upon it in effectuating the defendant's arrest FN1. The arresting officers did not testify at the suppression hearing, nor did the detective testify about the circumstances of the arrest.

The People contend that the circumstantial evidence suffices, pointing to the fact that the defendant was arrested one day after the I-card was created and taken to the precinct where the detective was based. We disagree. This evidence is too limited to establish that the arresting officers stopped and arrested the defendant in reliance on probable cause allegedly communicated by the I-card. In contrast to Ramirez-Portoreal, where the two officers were together on a rooftop, went from the rooftop to the same car, and drove together to the defendant's location, and the defendant's arrest occurred close in time to the first officer's observation of the defendant's illegal activities, the circumstances here do not support an inference that a communication establishing probable cause occurred between the detective and the officers.

We conclude that the People failed to provide evidence sufficient to show a communication between the officers based on the I-card, and therefore failed to meet their burden at the suppression hearing to establish probable cause for the defendant's arrest. Absent the requisite showing of probable cause, the defendant's statement must be suppressed as the fruit of an unlawful arrest.FN2

Accordingly, the order of the Appellate Division should be reversed, the defendant's motion to suppress statement evidence granted, and the case remitted to Supreme Court for further proceedings on the indictment.

Order reversed, defendant's motion to suppress statement evidence granted and case remitted to Supreme Court, Queens County, for further proceedings on the indictment. Opinion by Judge Halligan. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Cannataro and Troutman concur.

Decided April 16, 2026

Footnotes

Footnote 1

We also note that the People did not present any evidence of the contents of the I-card, beyond the detective's testimony that it advised there was probable cause to arrest the defendant.

Footnote 2

The People's assertion that the defendant's statement was attenuated from his arrest is unpreserved for our review (see People v Dodt, 61 NY2d 408, 416 [1984] ["the People may not on appeal raise for the first time" a new argument opposing suppression]). Additionally, because we conclude that the defendant's statement must be suppressed as the fruit of an unlawful arrest, we need not address his challenge to the voluntariness of the statement based on the court's use of the People's transcript as an aid.